FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CRYSTAL F.,<br><br>                    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  2:20-CV-00135-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 13 and 14.  This matter was submitted for consideration

without oral argument.  The Plaintiff is represented by Attorney Dana C. Madsen.

The Defendant is represented by Special Assistant United States Attorney David J.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further

action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER ~ 1

Burdett.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 13.

**JURISDICTION**

Plaintiff Crystal F.[2] filed for supplemental security income and disability insurance benefits on May 13, 2013, alleging an onset date of December 23, 2014.  Tr. 210-17.  Benefits were denied initially, Tr. 159-62, and upon reconsideration, Tr. 165-69.  A hearing before an administrative law judge ("ALJ") was conducted on January 21, 2016.  Tr. 42-63.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 37-63, and the Appeals Council denied review.  Tr. 1.  On September 28, 2018, the United States District Court for the Eastern District of Washington granted Plaintiff's Motion for Summary Judgment, and remanded the case for further proceedings.  Tr. 728-42.  On November 15, 2018, the Appeals Council vacated the ALJ's finding, and remanded for further administrative proceedings.  Tr. 743-47.  On April 24, 2019, Plaintiff appeared for an additional hearing before the ALJ.  Tr. 588-619.  The ALJ denied

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

ORDER ~ 2

benefits, Tr. 549-87, and the Appeals Council denied review.  Tr. 542-48.  The

matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and

transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

Only the most pertinent facts are summarized here.

Plaintiff was 33 years old at the time of the second hearing.  *See* Tr. 212.

She graduated from high school, and was in special education classes.  Tr. 81.  She

lives with her parents.  Tr. 86.  Plaintiff has work history as a grocery bagger and

garment sorter.  Tr. 83-85, 94-95, 612.  She testified she cannot work because she's

"slow" and "can't concentrate on anything."  Tr. 87.  Plaintiff testified that she

struggles to interact with people because of her anxiety, and reports that she has the

"mental capacity of a 13-year-old."  Tr. 81-82.  At the second hearing, Plaintiff

testified that her irritable bowel syndrome "causes [her] to not function half the

day," because she has to go to the bathroom three to four times every morning.  Tr.

604-05.  She reported difficulties with short-term memory and concentration, as

well as difficulty sleeping even with medication.  Tr. 606-07.  Plaintiff testified

that she only leaves the house one or twice a week.  Tr. 609.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

ORDER ~ 3

limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to

ORDER ~ 4

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

ORDER ~ 5

416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 23, 2012, the alleged onset date. Tr. 555. At step

ORDER ~ 7

two, the ALJ found that Plaintiff has the following severe impairments: borderline

intellectual functioning vs learning disorders; alcohol dependence/abuse, in self-

reported remission; ADHD; persistent depressive disorder; unspecified anxiety

disorder.  Tr. 555.  At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of a listed impairment.  Tr. 564.  The ALJ then found that Plaintiff has the

RFC

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant is able to understand, remember, and
> carryout simple, routine, and repetitive tasks/instructions; is able to maintain
> concentration, persistence and pace on simple, routine tasks for two-hour
> intervals between regularly scheduled breaks; predictable work environment
> with seldom changes; no fast paced production rate of pace; no judgment or
> decision making; no reading/writing as an essential function of the job; brief
> and superficial (defined as non-collaborative/no tandem tasks) interaction
> with coworkers, supervisors and the public; no crowds (defined as groups 3-
> 4 people or more).

Tr. 566.  At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work.  Tr. 575.  At step five, the ALJ found that considering Plaintiff's

age, education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, including:

housekeeping cleaner and marker, price.  Tr. 576.  On that basis, the ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social

Security Act, from December 23, 2012, through the date of the decision.  Tr. 576.

///

ORDER ~ 8

ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and

2. Whether the ALJ properly considered the medical opinion evidence.

DISCUSSION

A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

ORDER ~ 9

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however,

Plaintiff's "statements concerning the intensity, persistence, and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other

evidence in the record" for several reasons. Tr. 567.

### 1. Daily Activities

The ALJ found that Plaintiff's "daily activities, while somewhat limited, are

consistent with the RFC outlined [by the ALJ]." Tr. 570. A claimant need not be

utterly incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603; *see

also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain

ORDER ~ 10

activities . . . does not in any way detract from her credibility as to her overall

disability."). Regardless, even where daily activities "suggest some difficulty

functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the

extent that they contradict claims of a totally debilitating impairment." *Molina*,

674 F.3d at 1113.

In support of this finding, the ALJ cited Plaintiff's ongoing reports of

"relatively good functional activities," including maintaining a savings and

checking account; doing household chores such as vacuuming, mopping, cleaning

bathrooms, and doing dishes; attending to personal care; watching TV; surfing the

internet; playing video games; sewing; walking her dog; reading; preparing simple

lists and following a small shopping list; and archery. Tr. 570 (citing Tr. 329, 335,

375, 384, 449, 994, 1063, 1076, 1107 ("activities of daily living are within normal

limits"). The ALJ also specifically found inconsistencies between Plaintiff's

testimony and her reported activities. For example, Plaintiff testified that she is

afraid to leave her house and only goes out 1-2 times a week, but records indicate

that Plaintiff walked her dog on a regular basis, went to the grocery store with her

mom, and "reported she had recently lost 10 pounds playing pok-e-mon go." Tr.

570 (citing Tr. 994, 1076). The ALJ concluded that these activities show "at least

some ability to function in social/public settings," and "pok-e-mon go requires the

player to walk around town/explore in order to catch critters, and [Plaintiff's]

ability to play this game is inconsistent with an individual who is afraid to leave

her house due to anxiety and other issues."  In addition, the ALJ found Plaintiff's "hobbies including reading, comics, and playing video games, which [the ALJ] notes is consistent with an ability to perform at least simple, routine tasks."  Tr. 570.

Plaintiff generally argues that the ALJ's reliance on these types of activities was not a clear and convincing reason to discount her symptom claims.  ECF No. 13 at 14-15; *Fair*, 885 F.2d at 603 (claimant need not be "utterly incapacitated to be eligible for benefits").  In her reply brief, Plaintiff further contends that (1) "[e]ven though [Plaintiff] reported doing these activities, the record does not indicate how proficient she is in performing these activities"; (2) several of Plaintiff's reports of activities "predated her application" for benefits; and (3) the ALJ is improperly "speculating as to the type of activity [Plaintiff] engaged in when playing Pokemon Go."  ECF No. 15 at 3-5.  However, it was reasonable for the ALJ to conclude that Plaintiff's documented activities, including playing walking and caring for her dog, reading, playing video games 4-5 hours a day, researching on the computer, and caring for the household, was inconsistent with her allegations of entirely debilitating functional limitations, and consistent with the assessed RFC limitation to simple, routine tasks.  *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *Tommasetti*, 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence).

ORDER ~ 12

Moreover, even assuming, *arguendo*, that the ALJ erred in making this finding, any error is harmless because, as discussed herein, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### 2. *Improvement*

Next, the ALJ found that treatment records show Plaintiff's anxiety, depression, and ADHD were "generally well-controlled with medication." Tr. 567-68. A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). In support of this finding, the ALJ cites Dr. Gwinn's treating provider notes from 2013 to 2016 that include reports that Plaintiff "was doing well, her mood was good, and she appeared relaxed and not anxious on examination." Tr. 567-68; Tr. 347-48, 354, 390, 415-16, 1053-55, 1058, 1061. In addition, the ALJ cited Plaintiff's 2017 report that she was "doing fine, mood good" on Sertraline; February 2018 report that she "feels this is getting better with proper medication"; May 2018 reports that her anxiety was controlled and she was "stable on current treatment"; and provider reports in July 2018 that Plaintiff's anxiety and depression were improving with medication. Tr. 568 (citing Tr. 390, 1029, 1032, 1049, 1084, 1121). Finally, as to

ORDER ~ 13

her ADHD, records from across the relevant adjudicatory period indicate that

Plaintiff was doing well on her medication, her focus and concentration were

improved with medication, and by 2018 records documented Plaintiff's ADHD as

"stable and controlled."  Tr. 568 (citing Tr. 354 (noting she has been on the same

dose for 5-7 years), 394 ("doing well" on a low dose of ADHD medication), 1033,

1049-51, 1055, 1061).

Plaintiff argues, without specific citation to the medical evidence, that it was

"error for an ALJ to pick out a few isolated instances of improvement or a period

of months or years and then to treat them as a basis for concluding [Plaintiff] is

capable of working."  ECF No. 13 at 16 (citing *Garrison v. Colvin*, 759 F.3d 995,

1017-18 (9th Cir. 2014) (noting that treatment notes "must also be interpreted with

an awareness that improved functioning while being treated and while limiting

environmental stressors does not always mean that a claimant can function

effectively in a workplace.").  However, as noted elsewhere in the ALJ's decision,

objective testing is "largely inconsistent" with Plaintiff's allegations of total

disability, including ongoing normal mental status examinations.  *See* Tr. 568

(citing Tr. Tr. 330, 340, 390, 399, 421, 448, 489, 994, 1006, 1067, 1072, 1077-78,

1082, 1086, 1095, 1107, 1114-15, 1132).  Plaintiff fails to offer specific evidence

from the record to support the argument that the effectiveness of Plaintiff's

medication was "isolated" or "sporadic"; nor did the ALJ made any specific

findings that the effectiveness of treatment showed that Plaintiff could work full-

time.  Rather, the ALJ reasonably concluded that, despite evidence that could be considered favorable to Plaintiff, longitudinal evidence of effective treatment of Plaintiff's claimed mental impairments was inconsistent with her allegations of incapacitating limitations.  *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).  This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3.  Additional Reasons

As noted by Defendant, Plaintiff failed to challenge all of the ALJ's reasons for rejecting Plaintiff's symptom claims in her opening brief, and has therefore waived her opportunity to challenge those reasons.  ECF No. 14 at 4.  The Court may decline to address issues not raised with specificity in Plaintiff's opening brief.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).  Despite Plaintiff's waiver, the Court will briefly review the additional reasons arguably given by the ALJ to discount Plaintiff's symptom claims.

First, the ALJ found that the objective medical evidence does not fully support the level of limitation claimed by Plaintiff.  Tr. 567-69.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,
346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).

However, the medical evidence is a relevant factor in determining the severity of a
claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §
404.1529(c)(2).  Here, the ALJ acknowledged that Plaintiff has "demonstrated
significant cognitive deficits on mental status examination"; however, the ALJ also
set out the medical evidence contradicting Plaintiff's claims of disabling
limitations.  Tr. 568.  For example, the ALJ noted a "significant variability in test
scores, which is largely inconsistent with [Plaintiff's] allegations of total
disability."  Tr. 568 (citing Tr. 318-19, 330, 340, 463, 466-67 (noting "significant
discrepancy" in scores), 985-86, 1006, 1015-16, 1024).  In addition, the ALJ found
Plaintiff has "consistently scored within the normal range on the Mini Mental
Status Examination," demonstrating good registration, attention and calculation,
recall, language, orientation, ability to follow simple commands, attention span,
concentration, recent and remote memory, orientation, and fund of knowledge.  Tr.
568-69 (citing Tr. 330, 340, 390, 399, 421, 448, 489, 994, 1006 (scoring 28 out of
30 possible points), 1067, 1072, 1077-78, 1082, 1086, 1095, 1107, 1114-15, 1132).
Finally, the ALJ acknowledged that examinations have shown mild to moderate
cognitive deficits, but noted these impairments were accommodated in the assessed
RFC.  Tr. 569.

ORDER ~ 16

1    In her reply brief, Plaintiff cites several treatment notes observing abnormal

2    speech, constricted affect, depressed and anxious mood, "retarded psychomotor

3    activity," and fair judgment.  ECF No. 15 at 6-7, 12 (citing Tr. 984, 1082, 1086,

4    1090).  Plaintiff also notes that her treating provider, Dr. Douglas R. Gwinn,

5    assessed marked limitations in multiple "work-related activities."  However, the

6    Court notes that Plaintiff does not challenge the ALJ's rejection of Dr. Gwinn's

7    opinion in her opening brief.  Moreover, regardless of evidence that could be

8    considered favorable to Plaintiff, it was reasonable for the ALJ to find the severity

9    of Plaintiff's symptom claims was inconsistent with objective findings from the

10    longitudinal record.  Tr. 567-69.  "[W]here evidence is susceptible to more than

11    one rational interpretation, it is the [Commissioner's] conclusion that must be

12    upheld."  *Burch*, 400 F.3d at 679.

13    Second, the ALJ found that Plaintiff's statements "were not entirely

14    consistent with the record as a whole"; and specifically, Plaintiff "has made

15    inconsistent statements regarding her history, symptoms and limitations."  Tr. 569.

16    These inconsistencies, unchallenged by Plaintiff in her briefing, include: a report of

17    past trauma followed by subsequent ongoing denials of past trauma; reported

18    history of suicide attempts on some occasions, but specifically denying suicide

19    attempts on "many" other occasions and a denial of suicide attempts by Plaintiff's

20    mother; a report of severe panic attacks three times a week in 2018, followed by a

21    report two weeks later that her anxiety was well-controlled on medication; reports

ORDER ~ 17

of difficulty sleeping "not fully supported by the record" showing consistent

reports that she generally slept well and denied sleep disturbance; and Plaintiff's

allegations at the hearing that IBS caused her to be "unable to function half the day

is inconsistent with the objective medical record and her reports to providers" that

her IBS was well-controlled.  Tr. 569 (citing Tr. 328, 367, 389, 414, 441, 448, 450,

487, 491, 494, 520, 529, 983, 994, 1004, 1011, 1029-32, 1049, 1053, 1058, 1061,

1066, 1069, 1073, 1076, 1095, 1107, 1125, 1128, 1132).  In addition, the ALJ

noted that Plaintiff's "ability to speak her mind clearly, advocate for certain

conditions and request very specific medications is not fully consistent with an

individual truly suffering from the severe degree of cognitive limitations alleged by

[Plaintiff]."  Tr. 569, 1124, 1096.  Based on the foregoing, in evaluating the

severity of Plaintiff's symptoms, the ALJ properly considered inconsistencies in

Plaintiff's statements, and between her testimony and her conduct.  *See Thomas*,

278 F.3d at 958-59; *Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements

may be considered).  This was a clear, convincing, and unchallenged reason for the

ALJ to discount Plaintiff's symptom claims.

Finally, the ALJ found that Plaintiff was "only seeking treatment for

secondary gain purposes and not because she actually needed help with her mental

health issues, which is inconsistent with her underlying claims of disability."  Tr.

570.  In support of this finding, the ALJ cited continuing evidence that Plaintiff's

stated treatment goal was to obtain benefits, and on at least one occasion she was

unable to identify an overarching treatment goal aside from "to get financially

stable." Tr. 569-70 (citing Tr. 1076 (Plaintiff and her mother explained they were

"here for disability purposes"), 1080 (Plaintiff had "difficulty identifying an

overarching [treatment] goal other than to get financially stable"), 1093 (noting

that Plaintiff sought treatment "because she got a letter from DSHS that she needed

to have mental health assessment in order to continue to receive benefits")). It was

proper for the ALJ to consider evidence that Plaintiff was motivated by secondary

gain in evaluating her symptom claims. *See Matney on Behalf of Matney v.*

*Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

The Court concludes that the ALJ provided clear and convincing reasons,

supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* If a treating or examining physician's opinion is

uncontradicted, the ALJ may reject it only by offering "clear and convincing

reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

The entirety of Plaintiff's argument regarding the medical opinion evidence in her opening brief, consisting of less than one page, is that the ALJ improperly relied on the opinion of non-examining, non-treating doctors, as opposed to Plaintiff's examining and treating providers.  ECF No. 13 at 16-17.  Plaintiff is correct that the opinion of a non-examining medical advisor cannot, by itself, constitute substantial evidence that justifies the rejection of an examining or treating physician.  ECF No. 13 at 16 (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999)).  However, where, as here, the treating or examining physician's opinion is contradicted by medical evidence, the opinion may still be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record.  *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995). As noted by Defendant, the ALJ offered several additional reasons for rejecting the opinions of the treating and examining providers listed by Plaintiff

ORDER ~ 20

in her brief.  Moreover, Plaintiff entirely failed to challenge any of the ALJ's

reasons for rejecting the opinions of Douglas R. Gwinn, M.D., W. Scott Mabee,

Ph.D., Brian R. Campbell, Ph.D., Debra D. Brown, Ph.D., Kayleen Islam-Zwart,

Ph.D.,[3] and has therefore waived her opportunity to challenge those reasons.  *See*

*also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider

on appeal issues not "specifically and distinctly argued" in the party's opening

brief).  As noted by Defendant, Plaintiff also failed to raise any challenge to the

ALJ's re-consideration of the testimony of Nancy Winfrey, Ph.D., the medical

expert in the previous hearing, pursuant to the remand order of the District Court.

---

[3] In her opening brief, Plaintiff listed "examining providers," without any further

argument, which included Jennifer Van Wey, Psy.D., John F. McRae, Ph.D., and

Robby C. Riddle, Lt Col, USAF, MC, FS,   ECF No. 13 at 17. However, as noted

by the ALJ, these opinions were 6-7 years before the alleged onset date of

disability and "therefore not pertinent."  Tr. 572.  In addition, Plaintiff lists treating

providers Betty L. Vicena, LISCW and Ronald L. Eastman, MED LMHC; but the

record only includes treatment notes from these providers, as opposed to medical

opinions that assessed specific functional limitations.  Regardless, as noted *supra*,

the Court declines to address the ALJ's consideration of these medical opinions

and records, as they are not challenged with specificity by Plaintiff.  *See*

*Carmickle*, 533 F.3d at 1161 n.2.

ORDER ~ 21

Based on the foregoing, the Court declines to address the ALJ's consideration of the medical opinion evidence because it was not raised with specificity in Plaintiff's opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, and Plaintiff waived her opportunity to challenge the medical opinion evidence.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is

   **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** August 20, 2021.

Stanley A. Bastian
Chief United States District Judge

ORDER ~ 22